Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington, Idaho, on behalf of Mr. Croson. I'm going to do my best to reserve three minutes for rebuttal. Please watch the clock. Stemming from frustration with Mr. Croson, the record shows that the district court was intent on two things. Punishing Mr. Croson for supervised release violations and showing respect for the law. Based on that frustration and intent to punish, required procedural safeguards were ignored. The district court failed to secure a personal admission of the supervised release violations from Mr. Croson. The district court also failed to allow the government to speak regarding revocation. So you're asking us to extend the law to say that it's required to get a direct admission from the defendant. Is that right? In a supervised release revocation? Your Honor, I think at a bare minimum, a court is required to take an admission. That's a good question. And Judge Acuda is asking whether you're wanting us to extend the law to require that. And your response is you think we ought to require that. So... Well, I struggle with the word extend because... That's the question. Wouldn't it be new law? Well, if we look to a recent case that was decided admittedly unpublished in the Magana decision, that's exactly what the panel there did. The panel reversed and remanded the judgment in that case because there had not been any formal admission by the defendant. It was essentially the exact same position that's being advocated here. So you're asking us to adopt that rule as binding authority? Yes. It... There was no formal admission. This would amount to... Otherwise, counsel could simply decide what's in the defendant's best interest, make admissions on behalf of the defendant, and there would be no redress for that situation. Was counsel's admission before or after the defendant spoke? Before. The hearing began. Judge Whaley asked counsel, how do you intend to proceed? Counsel stated that the defendant would admit. Judge Whaley then called both counsel and Mr. Croson to the podium, and that's when Judge Whaley asked the question, in essence, should I give you more treatment or should I just punish you? It was at that point that Mr. Croson began to speak. There was a bit of a dialogue. He seemed to be acknowledging at that point. I read this transcript, and it seemed to be that he was acknowledging that the treatment wasn't working well for him. Mr. Croson you're speaking of. Right. I think I misunderstand his remarks. I think Mr. Croson was stating that the overall structure was not working well for him. I would agree with that. Does the court have another choice then? I mean, I think that context is important because your argument here, as I that part, is that the judge was speaking about punishing him. And at this point, they had heard from the probation. There really wasn't much question about the nature of the allegations. Probation had spoken to five of the six violations. That's correct. Well, counsel, what did you want the district court judge to do in this context? It seems to me when the judge talked about punishing, he's asked Mr. Croson, and Mr. Croson has made the Well, I think the problem is that the court phrased the question in terms of do you want more treatment or should I just punish you before Mr. Croson had ever spoke. And the Mickbell case, which we cited at some length, discusses that punishment and respect for the law are incorrect factors for a sentence in court to view in determining what the right sentence is. So from the outset, the way Judge Whaley had phrased that inquiry, a binary choice between two options, one of those options is not tolerated by binding Ninth Circuit precedent, namely the Mickbell case. And so my question is, what other option did the court have in light of the record and the context here? What would you have expected the district court to do? I'm not sure if Your Honor is asking me what kind of sentence or what the district court should have taken an admission from Mr. Croson as to what the violations were. Thank you. And then counsel then advocated at length after the district court had initially pronounced sentence without really hearing from counsel. Council then advocated for, in essence, a low-end guideline sentence of seven months. That was certainly another option. I was speaking to the other issue, which is I think you're taking issue with the judge for punishing. And that's a separate argument from your admission argument. It is a separate argument, Your Honor. And in terms of punishment, I think there are two different ways that one can look at it. One can look at what is a correct sanction for the breach of trust, i.e., these grade C violations, what is the correct sanction for that? Or I believe where the district court erred was in looking at punishing Mr. Croson for, in essence, and I'm categorizing my own words, wasting the court's time and wasting the court's resources. That was one thing that comes out from the transcript is there appears to be frustration that Mr. Croson had wanted to engage in treatment. And I think it's clear that the district court was frustrated with that and sought to punish him for going through that process previously and essentially going to treatment. You don't disagree that the judge could punish him for breach of trust, right? I think we use the word sanction in some of our prior cases, but that's certainly within the court's discretion. You don't disagree with that, right? I don't disagree that the court can sanction someone for breaching trust. So we don't, do we know what, so the court said I can just forget supervising you. So the court asked whether Croson had turned his back on treatment and wanted the court to just forget supervising you, punish you, and we don't provide any more help. And so what is, how do you understand the punish you in that context? I think that the phraseology punish in that context is best understood in terms of the arguments and evidence that occurred previously. And the government had actually submitted in supplemental excerpts the prior hearing back in January at which there was a lengthy discussion about resources and using resources for treatment. And it, I think the most logical interpretation of Judge Whaley's reference to punish is to punitively assess time to Mr. Croson for wasting the court's time and in effect wasting the court's money on something that the court ultimately did not succeed with. What's the difference between that and sanctioning someone for breach of trust? I find that distinction in our case law a little bit puzzling. Your Honor, I think that, I think the distinction is in a breach of trust, a person is trusted to do something such as perhaps go to treatment or avoid new criminal law violations or the like. And if they violate those terms, they may have to undergo some sort of sanction based in essence on the, either the unwillingness or the inability to simply follow a command. That is different than perhaps looking at the underlying conduct, assessing the severity of the conduct that caused the violation, and then deciding what is an adequate punishment for that conduct. We don't really know which it was in this case, I guess. I think we can simply... Just use that word. I think we can simply take Judge Wailiotta's word that that's what he was doing. I'd like to reserve the rest of my time. May it please the court. I'm Dan Fruchter with the United States Attorney's Office for the Eastern District of Washington. Good morning. I'd like to start with actually the last colloquy between appellant and in the court. And just point out that if one reads the transcript in context, the district court's opinion and sanction was not intended to punish the defendant, but rather to properly sanction him for, as the court pointed out, a breach of trust. And that's not only a permissible consideration under US v. Simtobe, but in fact, one of the paramount considerations. If you read that paragraph to which the appellant refers, the district court is explicitly stating, we invested this time and this trust in you, the appellant, that if we paid for this inpatient treatment, and if we accepted your recommendation, and if we kept you out of prison and allowed you to undergo this treatment, and the district court essentially says, you turned your back on us. That's a direct quote on all the things that were provided. So, you know, while the district court may have used that word punish, read in context, that's clearly a reference to the sanction portion of the revocation proceeding, not any kind of... So forgive me, counsel, but right there, you seem to be arguing now that district court imposed the 12 months because the defendant washed out of violating the conditions. No, what I'm saying is that the district court properly took into consideration all of the factors that are available under the relevant statute, and in fact, adopted the probation officer's recommendation, which as the probation officer set forth, was based on all the proper factors for consideration, not including, you know, providing just punishment or anything like that. I'm merely just trying to address when the court refers to, do you want to continue treatment or should I just punish you and move on, what he's saying to the appellant is, do you want more treatment? Do you want to continue on supervision? Because that was the question, and the appellant actually asked to be taken off supervision, or do we go forward with the sanction for the violations of the conditions and move on? Right. So for me, the important context is that he, first of all, the great lengths we've gone to to get him into treatment, but also because he washed out right away. Right away. And so I think in context, it seems to me what he's saying is, is there a reason to send you back? That's correct, Your Honor, and that was the one of the disputes. Probation in this case was recommending some continued supervision. The appellant actually was asking to be taken off supervision, and so the court was asking after all this time, money, and effort that we invested in this treatment, which you immediately abandoned in a few days, do you really want to continue or do I just sanction you for the violations that you've already admitted and move on? Did you read the district court to be offering, or at least considering that he would send Mr. Croson back to treatment if Mr. Croson wanted more treatment? I can't read what's in the district court's mind. I do read Mr. Croson's remarks to indicate that treatment was not working for him and that he did not wish to be sent back to treatment. That seemed to be the interpretation, and in fact, it was the appellant's specific request that supervision be discontinued. You read it the same way, counsel? That was my interpretation sitting in that hearing, yes. Counsel, is it problematic that the government didn't speak as to the appropriate sentence? That's an excellent question, and I'm used to getting in trouble for when I open my mouth. This is the first time I've ever gotten in trouble for not speaking. Did you file a revocation? Did the government ever express its position? Not to the court. It would be typical in a revocation proceeding and happen in this instance for counsel to discuss the recommendation ahead of time, and so I'd like to just... What do you mean? You never expressed it to the court is what I'm asking, is that right? That's correct. Okay, thank you. Yes, but I would like to address why I think this case is very different from the Arrutia-Contreras opinion that this court previously handed down. In that case, the court found error, not under the plain error standard, but under the harmless error standard when the district court refused to permit the government to speak. In that case, because the defendant specifically objected, it was the government's burden to show that the error was harmless. In this case, because there was no objection and no request that the government provide its recommendation, the burden is on the appellant not only to prove that the error was harmful, but also that it seriously impacted the integrity of the proceeding. I also want to just point out that the government was not prohibited from speaking at this revocation. Can you back up there? Sure. There, I think, are important differences between this case and the earlier case that you mentioned. In the other case, the district court wouldn't let the government speak. It took over and wouldn't allow. Really quite different, I think, in that regard. But what about prejudice? Is it your position that the defendant here would still need to show the fourth part of a plain error standard? Yeah. In light of what we said in the earlier case? That's exactly right. We said it was prejudicial if the court had the leeway to go lower. So what am I missing there? I think under the relevant case law and under the court's opinion in WOC 9, in a sentencing situation, and that was a similar situation where the government had filed a sentencing memorandum but didn't have the opportunity to speak at the sentencing hearing. And what the court said is in the context of a plain error review as opposed to a harmless error review, the defendant or appellant must show that a different outcome would have been probable, not just that it was possible. Is that, is the harmless or the prejudiced prong the same as the fourth prong seriously affected the fairness, integrity, or public reputation of judicial proceedings? Did they collapse into each other or are they distinct prongs? That's a good question. I think it's the third prong, which is that the error seriously impacted the defendant's rights, and the fourth prong that it also seriously impacted the integrity of the proceeding. And you can see that in the Arrutia Contreras case, even though it was a different standard of review, right? There, the district court said, government, you're not allowed to speak. I don't care what the government has to say. I'm going to disregard it. That is not what happened here. Here, the probation officer provided a recommendation. The government had the opportunity to ask questions or provide additional information, and the government didn't do that. And so the only thing missing was that the court didn't specifically ask the government, do you agree with probation's recommendation? But counsel, you're not speaking to the prejudice problem, and that's our problem here. Because we have this earlier case that says, we have held that where a defendant is denied the right to speak at sentencing, there is prejudice, right? And then it goes on to talk about, as long as the court had the ability to impose a lower sentence, there's prejudice. So why did it, is it your position that these do collapse? I think it's a different standard under the Arrutia Contreras case. And I think if you look at the WOC 9 case, which I don't understand Arrutia Contreras to have overruled in the context of when the government doesn't speak, then the question is really, is it more probable than not? What's the probability that having the government speak would have led to a different result? And for that proposition, you rely on which case? The WOC 9. The final thing I wanted to just address briefly is the lack of the admission. The defendant did admit to the violations through counsel in this case. After the probation officer provided extensive on-the-record sworn testimony, defense counsel admitted to the violations on behalf of the defendant and then admitted to the specific violations, admitted that the defendant was a methamphetamine addict who had continued to use and that he had misled the court about his employment status. This court has specifically held in the 1970s that a Rule 11 plea colloquy between the judge and the defendant personally is not required in a revocation proceeding. And other circuits, at least three that I'm aware of, has specifically held that in the context of a revocation proceeding, the defendant's counsel may provide the admission for the defendant and rejected appeals where the defendant appealed based on the fact that his counsel, not he, had made the admission to the court. So unless there's further questions. Thank you for your argument. You have some time for rebuttal. Thank you. I did want to address the Arrutia issue. I think it's important to note that one of the issues that came up in that case and one of the issues commented on by the court was that not allowing the government to speak can create the appearance of the court standing in for the government, calling into question the impartiality of the sentencing court. I didn't understand that language in our prior case. How could that be when it is the court's responsibility to impose the sentence? I don't understand that at all. Your Honor, what I understood the court to be saying in that instance is that we have an adversarial system where you have the prosecution and the defense and the court is supposed to act as sort of a referee. I thought in the revocation proceeding it was the court making a determination based on breach of trust. That's what we said in our prior cases, not that you're having an adversarial proceeding the way you would at the original sentencing. Am I wrong on that? Well, respectfully, perhaps partially, in that I think the initial determination for a court to make is whether a violation occurred at all. And that's based on what the probation officer provided, who is an officer of the court, correct? I don't think a court is allowed to simply rely on a probation officer's report without input from the parties. Right, the court makes the findings and the defendant has a chance to speak. But it's by preponderance of the evidence. It's not even, it's not beyond a reasonable doubt the way it is in the original criminal proceeding. Isn't the distinction between finding that the violation has occurred and then the court has discretion about what to do about that, isn't that where the adversarial nature comes in? In this case there wasn't, and I think in both cases, there wasn't really an issue about whether or not the revocation had occurred. There's a question about what the court's going to do. I think that that's true, but I also believe that what the court was getting at in Arrutia was if the court takes the role of the government in advocating for a high sentence. Is the court advocating for a high sentence by determining what the appropriate sanction is? I don't understand that. Well if we're only, if the court is only hearing from one party then that does tend to create the situation. What party was he hearing from? He was hearing from the probation officer who's an officer of the court. And he was hearing from Mr. Croson, but he did not hear at all from the government. So the government was unfairly prejudiced by not having the ability to advocate for a higher sentence. But I don't understand why the court's determination based on its findings and the defendant's statements is stepping into the shoes of the government. I find that very puzzling. I believe that what the court was getting at in that case is that the public in looking at those hearings, if they're seeing what amounts to in essence a defendant advocating for one position and what appears to be the court stepping into the role of the government in advocating for an adverse position, that creates a situation where the court no longer appears to the but in fact is taking on the role of the government. I took you over your time. We appreciate your argument. In the case of United States versus Croson is now submitted. The next case United States versus Layton is submitted on the briefs and we'll next hear argument in the estate of James Lee DiMaggio and Laura DiMaggio Robinson versus the United States.
judges: Ikuta, Christen, Choe-Groves